**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CARLOS MENDOZA,
    *Petitioner-Appellant,*

v.

TOM L. CAREY, Warden,
    *Respondent-Appellee.*

No. 04-56733

D.C. No.
CV 04-02632 CJC

OPINION

Appeal from the United States District Court
for the Central District of California
Cormac J. Carney, District Judge, Presiding

Argued and Submitted
October 17, 2005—Pasadena, California

Filed June 7, 2006

Before: Andrew J. Kleinfeld, A. Wallace Tashima, and
Raymond C. Fisher, Circuit Judges.

Opinion by Judge Tashima;
Dissent by Judge Kleinfeld

## COUNSEL

Stephen M. Lathrop, Rolling Hills Estates, California, for the petitioner-appellant.

Keith H. Borjon, Deputy Attorney General, Los Angeles, California, for the respondent-appellee.

## OPINION

TASHIMA, Circuit Judge:

Carlos Mendoza, a California state prisoner, appeals from the judgment of the district court, which dismissed as untimely his petition for writ of habeas corpus. Under the Anti-Terrorism and Effective Death Penalty Act of 1996

("AEDPA"), habeas petitions must be filed within one year from the date when the petitioner's judgment of conviction became final. 28 U.S.C. § 2244(d). Mendoza, who is a Spanish speaker, argued that he should qualify for equitable tolling of the one-year limitations period because the prison law library failed to provide Spanish-language books or Spanish-speaking clerks or librarians to assist Spanish-speaking inmates.[1] The magistrate judge concluded that the absence of Spanish-language materials from Mendoza's prison library did not amount to an extraordinary circumstance for purposes of the equitable tolling analysis. The district court adopted the magistrate judge's report and recommendation; accordingly, it dismissed Mendoza's petition as untimely. On appeal, Mendoza contends that he is entitled to equitable tolling because the lack of Spanish-language assistance was an extraordinary circumstance beyond his control that made it impossible to file a timely petition. Further, he contends that the district court erred in failing to hold an evidentiary hearing on the issue of whether equitable tolling was appropriate.

We have jurisdiction under 28 U.S.C. § 2253. We agree that an evidentiary hearing is required because Mendoza has alleged facts which, if true, could entitle him to equitable tolling. We therefore reverse and remand to the district court for development of the factual record.

---

[1]The dissent states that Mendoza "does not claim that he can read Spanish." Dissent at 6246. It is true that Mendoza does not make an outright, flat statement that he can read Spanish, but that fact is easily and reasonably inferred from the statements he does make. For example, Mendoza states in his declaration that "if I had ever seen any notice in the Department of Corrections that I had only one year to challenge my sentence I would have done so, *especially if such notice was written in Spanish*." (Emphasis added.) Inferring from these statements a conclusion other than that Mendoza can read Spanish defies common sense. While we agree with the dissent that the ability to read a foreign language "is not transmitted through the blood," dissent at 6246 n.2, Mendoza requested Spanish-language books at two prisons, acts that are inexplicable unless Mendoza is able to read Spanish.

**Factual and Procedural Background**

Mendoza is currently serving a 14-year sentence after pleading no contest to a charge of assault with a firearm. Mendoza did not appeal; therefore, his conviction became final on August 21, 2001, 60 days after the judgment of conviction. He filed his first petition for writ of habeas corpus in the Superior Court of California on May 14, 2003.[2] He subsequently filed a second habeas petition in the Superior Court, a petition in the California Court of Appeal, and two petitions in the California Supreme Court. All of these petitions were denied, with the final denial from the California Supreme Court occurring on March 17, 2004. Mendoza then filed his federal habeas petition on April 3, 2004. On April 26, 2004, the district court issued an order requiring petitioner to show cause why the petition should not be dismissed as untimely. It noted that the AEDPA's limitations period expired on August 21, 2002, one year after Mendoza's conviction became final, and that absent equitable or statutory tolling, his petition was time-barred. According to the district court, Mendoza had not "provided any explanation for the lengthy delay in filing," other than the allegation that he had been "hindered because he speaks Spanish and the prison does not provide Spanish language law books."

Mendoza responded to the order to show cause on May 24, 2004, stating that the prison law library possessed no Spanish books, no Spanish-English legal dictionaries, and no postings about the AEDPA time limitations in any language. In a declaration filed in support of his response, Mendoza stated that during his first three months of incarceration, he was held at the Reception Center, where there were no Spanish-language books and where he was told that he "would have to wait until [he] got to [his] regular assigned prison." When he arrived at Solano State Prison, Mendoza found no Spanish language

---

[2]At the time Mendoza filed his first state habeas petition, the AEDPA limitations period had already expired.

books or forms, and returned to the library "several times" but found only English-language books and English-speaking clerks and librarians. He further stated that he became "very discouraged" due to this inability to obtain information in Spanish. He "finally engaged in conversations with people on the prison yard" and found a recently-arrived inmate named Antonio who, for a fee, assisted Mendoza in filing a petition for writ of habeas corpus in the California Superior Court. Later, another inmate, Antolin Andrews, prepared and filed petitions on Mendoza's behalf in the California Court of Appeal, the California Supreme Court, and finally, the district court. Mendoza further asserted in his declaration that he would have challenged his sentence within a year if he had seen any notice in the prison alerting him to the one-year limitations period.

In addition to his own declaration, Mendoza filed 47 identical, form declarations, each signed by a Spanish-speaking inmate. Each declaration stated that the inmate had been to the legal library at the prison; had found no Spanish books that could assist the inmate in pursuing court action; and that the librarians and legal clerks did not speak Spanish. Antolin Andrews, the inmate who assisted Mendoza with his petitions, also filed a declaration asserting that in his experience with many California state prisons, he had never seen any Spanish books in the prison law libraries.

After reviewing this response to the order to show cause, the magistrate judge recommended that Mendoza's habeas petition be dismissed as untimely. The magistrate judge first found that statutory tolling was not applicable in this case because statutory tolling extends the filing deadline only during the time in which a "properly filed state habeas petition [is] pending," and Mendoza did not file any state habeas petitions until after the federal filing deadline had passed. On the issue of equitable tolling, the magistrate judge found that Mendoza's "general lack of legal knowledge, indigenc[e], and limited English skills are not external factors or extraordinary

circumstances beyond his control that made it impossible for him to file a timely petition."

The district court adopted the report and recommendation of the magistrate judge, and dismissed the habeas petition as untimely. Mendoza appealed, and the district court declined to issue a Certificate of Appealability ("COA"). We granted a COA on the following issues: (1) whether Mendoza is entitled to equitable tolling based on his inability to comprehend English and the lack of Spanish-language materials in the library; and (2) whether the district court erred in failing to hold an evidentiary hearing on the issue.

### Standard of Review

A district court's denial of a petition for writ of habeas corpus is reviewed *de novo*, and denial of an evidentiary hearing is reviewed for abuse of discretion. *United States v. Sandoval-Lopez*, 409 F.3d 1193, 1195 (9th Cir. 2005) (citing *United States v. Rodrigues*, 347 F.3d 818, 823 (9th Cir. 2003)). Findings of fact made by the district court are reviewed for clear error. *Moran v. McDaniel*, 80 F.3d 1261, 1268 (9th Cir. 1996).

### Discussion

**[1]** "[A] litigant seeking equitable tolling [of the one-year AEDPA limitations period] bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 125 S. Ct. 1807, 1814 (2005). "[T]he threshold necessary to trigger equitable tolling under [the] AEDPA is very high, lest the exceptions swallow the rule." *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (internal quotation marks and citation omitted). This high bar is necessary to effectuate the "AEDPA's statutory purpose of encouraging prompt filings in federal court in order to protect the federal system from being forced to hear stale claims."

*Guillory v. Roe*, 329 F.3d 1015, 1018 (9th Cir. 2003) (internal quotation marks and citation omitted). Equitable tolling determinations are "highly fact-dependent." *Whalem/Hunt v. Early*, 233 F.3d 1146, 1148 (9th Cir. 2000) (en banc) (per curiam). *Accord Lott v. Mueller*, 304 F.3d 918, 923 (9th Cir. 2002) (observing that equitable tolling determinations "turn[ ] on an examination of detailed facts").

**[2]** Whether a habeas petitioner's inability to obtain Spanish-language materials or procure translation assistance can be grounds for equitable tolling of the AEDPA's one-year limitations period is a question of first impression in this Circuit. In *Whalem/Hunt*, 233 F.3d at 1148, we held that the unavailability of a copy of the AEDPA in a prison law library could, but did not necessarily, constitute grounds for equitable tolling.[3] We remanded the case to the district court for appropriate development of the record. *Id.* So long as there are some circumstances "consistent with petitioner's petition and declaration" that would entitle the petitioner to equitable tolling, remand is appropriate. *Id.*; *see also Laws v. Lamarque*, 351 F.3d 919, 921 (9th Cir. 2003) (holding that "[b]ecause [petitioner] . . . made a good-faith allegation that would, if true, entitle him to equitable tolling," the claim should be remanded to the district court for further factual development of petitioner's claim that he was mentally incompetent during the limitations period).

**[3]** While *Whalem/Hunt* does not directly control the facts of this case, we find its reasoning instructive. In *Whalem/Hunt*, the state's failure to provide access to the text of the AEDPA constituted possible grounds for equitable tolling

---

[3]In *Whalem/Hunt* we concluded that the unavailability of a copy of the AEDPA also could be grounds for statutory tolling under the "state-created impediment" provision, *see* 28 U.S.C. § 2244(d)(1)(B), and remanded for further factual development of both that claim and the equitable tolling claim. *See* 233 F.3d at 1148. The COA in this case, however, included only the equitable tolling issue. Therefore, this opinion addresses the need for an evidentiary hearing in the context of that claim only.

because, according to the petitioner's allegations, the absence of a copy of the AEDPA prevented him from learning about the AEDPA's one-year deadline and therefore prevented a timely filing. *See* 233 F.3d at 1149 (Tashima, J., concurring). We concluded that remand was the appropriate remedy because the district court had provided the petitioner "no opportunity to amend his petition or expand his declaration," and had failed to hold an evidentiary hearing. *Id.* at 1148.

**[4]** By analogy, Mendoza has alleged that lack of access to Spanish-language legal materials prevented him from learning about the AEDPA's deadline and thereby prevented his timely filing. According to his declaration, when Mendoza was first incarcerated, he requested Spanish-language legal materials but was told to "wait until [he] got to [his] regular assigned prison." After arriving at Solano State Prison, he made several trips to the library but found only English-language books and only English-speaking clerks and librarians. Not until Mendoza found a newly-arrived, bilingual inmate willing to offer assistance was he able to file his habeas petition; however, by this time, the AEDPA deadline had already passed. We conclude that this combination of (1) a prison law library's lack of Spanish-language legal materials, and (2) a petitioner's inability to obtain translation assistance before the one-year deadline, could constitute extraordinary circumstances.

**[5]** This holding comports with the decisions of other Circuits, which have rejected a per se rule that a petitioner's language limitations can justify equitable tolling, but have recognized that equitable tolling may be justified if language barriers actually prevent timely filing. In *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002), the court held that a petitioner's "inability to speak, write and/or understand English, in and of itself, does not automatically" justify equitable tolling. The court emphasized that the "existence of a translator who can read and write English and who assists a petitioner during appellate proceedings" renders equitable tolling inapplicable for that petitioner. *Id.* Because Cobas had written a

detailed letter to his counsel in English and had otherwise demonstrated his ability to either communicate in English or communicate with a translator, the record in Cobas' case "be-lie[d] any claim that language difficulties prevented Cobas from filing his petition in a timely manner."[4] *Id.*

**[6]** We find this reasoning persuasive, because it implicitly identifies the category of non-English-speaking inmates whose situations could constitute "extraordinary circum-stances." Although the petitioner was ultimately denied relief in *Cobas*, the decision's rationale left open the possibility that a non-English speaker who could not find a willing translator could qualify for equitable tolling. Following this reasoning, we conclude that a non-English-speaking petitioner seeking equitable tolling must, at a minimum, demonstrate that during the running of the AEDPA time limitation, he was unable, despite diligent efforts, to procure either legal materials in his own language or translation assistance from an inmate, library personnel, or other source.[5] We agree with *Cobas* that a peti-

---

[4]The dissent's reliance on *Cobas*, dissent at 6250-51, is misplaced. In *Cobas*, tolling was denied because the petitioner *could* communicate in English. *See Cobas*, 306 F.3d at 444 ("As far back as 1993, Cobas wrote a detailed letter to his appellate attorney in English in which he discussed complex legal issues in detail."). Here, in contrast and contrary to the dis-sent's insinuation, the record contains *no* indication that Mendoza could communicate in English. The dissent further misreads *Cobas* when it argues that "were *Cobas* the law of this circuit, *a fortiori* Mendoza would lose on his tolling claim. . . ." Dissent at 6251. The dissent misses the dis-tinction between a translator whose help is not obtained until after the run-ning of AEDPA's one-year time limit, as was the case here, and a translator who is available during AEDPA's one-year time period, as was the case in *Cobas*. *Cobas* held that the existence of a translator who assists the petitioner "during his appellate proceedings" negates a petitioner's claim that he had reasonable cause for remaining ignorant of AEDPA's requirements. 306 F.3d at 444. *Cobas* did not address the situation pres-ented here in which the petitioner did not have any appellate assistance and claims that he could not obtain the assistance of a translator until after the time limitation had run.

[5]Because we acknowledge the possibility, as *Cobas* recognized, that inmates could use the services of translators not provided by the State, we announce no rule affirmatively requiring that prisons provide legal materi-als in Spanish.

tioner who demonstrates proficiency in English or who has the assistance of a translator would be barred from equitable relief. *See id.*; *see also United States v. Sosa*, 364 F.3d 507, 512-13 (4th Cir. 2004) (applying *Cobas*' reasoning and concluding that the petitioner's "excellent" English skills and ability to compose, without assistance, court filings in English, foreclosed any contention that lack of English proficiency justified equitable tolling).

**[7]** Our conclusion is completely consistent with the Supreme Court's recent decision addressing law library access rights. *Kane v. Garcia Espitia*, 126 S. Ct. 407, 408 (2005) (per curiam), held that the denial of access to a law library cannot provide a basis for a *pro se* petitioner's habeas relief because no Supreme Court case clearly establishes a *pro se* petitioner's constitutional right to law library access. The case at bench, however, involves only the tolling of an AEDPA deadline, not the actual grant of habeas relief, as was sought in *Kane*. Relief for Mendoza turns on the existence of an extraordinary circumstance that prevented timely filing, which does not require proof of any constitutional violation, much less a violation of a constitutional right that has been clearly established by the Supreme Court. *Cf. id.* at 408; 28 U.S.C. § 2244(d)(1)(B); 28 U.S.C. § 2254(d)(1). Accordingly *Kane*'s holding that the Supreme Court has not clearly established a Sixth Amendment right to law library access has no bearing on the inquiry before us.

**[8]** Because Mendoza alleged that he lacks English language ability, was denied access to Spanish-language legal materials, and could not procure the assistance of a translator during the running of the AEDPA limitations period, he has alleged facts that, if true, may entitle him to equitable tolling.[6]

---

[6]The standard for equitable tolling requires both the presence of an extraordinary circumstance and the inmate's exercise of diligence. *Pace*, 125 S.Ct. at 1814. The question of Mendoza's diligence is unclear from the limited record before us. Mendoza's declaration refers to his discour-

Therefore, there are "circumstances consistent with petitioner's petition and declaration under which he would be entitled to . . . equitable tolling," *Whalem/Hunt*, 233 F.3d at 1148, and remand for factual development of the record is the appropriate course of action. Mendoza has not yet been granted an evidentiary hearing in which his factual allegations could be established; nor has the State been provided with an opportunity to rebut Mendoza's allegations. We therefore reverse and remand to the district court for appropriate development of the record.

**REVERSED and REMANDED.**

---

KLEINFELD, Circuit Judge, dissenting:

I respectfully dissent.

Mendoza accepted a plea bargain and was sentenced in state court to fourteen years for assault with a firearm on a person. He contends in his federal petition for a writ of habeas corpus that his sentence was illegal. This case involves, not the merits, but the lateness of his petition. Here are the relevant dates of filing and denial of all filings seeking post conviction relief:

Sentence pronounced: June 21, 2001

Conviction final (there was no appeal): August 21, 2001

---

agement at not finding Spanish-language assistance in the prison law library, and refers to his "finally" obtaining the services of a bilingual inmate. These statements, however, make no reference to the time period in which these actions occurred. Therefore, it is impossible to ascertain on this record whether, during the *relevant* time period, Mendoza exercised the requisite diligence in his search for Spanish-language materials or a willing translator. Upon remand, the district court will be able to clarify these factual ambiguities.

Petition for writ of habeas corpus in California Superior Court May 14, 2003, denied May 16, 2003

Petition for writ of habeas corpus in California Supreme Court July 10, 2003, denied March 17, 2004

Petition for writ of habeas corpus in Los Angeles Superior Court: July 18, 2003, denied July 31, 2003

Petition for writ of habeas corpus filed in United States District Court April 15, 2004 (this is the date it is stamped filed, but the court throughout has given him the benefit of the "mailbox rule" and considered it filed on April 3), denied September 1, 2004

Unless equitably tolled, the AEDPA one-year statute of limitations[1] barred Mendoza's federal habeas petition in August 2002, long before he filed anything in any court challenging his conviction or sentence. He was silent during the year he was given to challenge his conviction and sentence. The majority concludes that the one-year statute of limitations may not have run because Mendoza has made a sufficient showing to get an evidentiary hearing on whether language difficulties prevented him from filing a timely petition. The evidence in the record undermines that conclusion.

Mendoza was born in the U.S.A. He says that his parents were Spanish speaking. Though he complains of the lack of Spanish legal materials in prison libraries, he does not claim that he can read Spanish.[2] Nor does he show that the neces-

---

[1] 28 U.S.C. § 2244(d)(1).

[2] The majority says that any inference other than that Mendoza can read Spanish "defies common sense." Majority Opinion at 6237, n.1. I think common sense suggests that a person born in the U.S.A. who grew up here most likely does not read Spanish and that anyone who filed as many affidavits as Mendoza did would file one saying that he could read Spanish, if he felt he could do so without exposing himself to a perjury prosecution. The ability to read a language foreign to the country of one's birth is not transmitted through the blood.

sary legal materials, such as the federal statutes, rules, and cases exist in Spanish text. We are evidently imposing an evidentiary hearing on this old conviction on the theory that one somehow becomes literate in an ancestral language by osmosis and no declaration asserting this literacy is required. Were that so, there would be a lot of subscriptions to Der Spiegel, Le Monde, the Yiddish edition of The Forward, and all sorts of other foreign language newspapers and magazines in the United States. Most of us who are born in the United States, as Mendoza was, are unfortunately illiterate in our ancestral tongues. Mendoza evidently speaks Spanish, and does not read English, but that does not imply that he reads Spanish at a level such that he could understand legal texts if they were available to him in Spanish. Those imprisoned for gang shootings on the streets of Los Angeles as Mendoza was may not always have been the stars of their junior high school class. He has not claimed that he can read Spanish.

Mendoza's declaration says that the "reception center" to which he was initially sent had no Spanish-language materials and the librarian there told him that he would have to wait until he got to his assigned prison. That could not have prevented him from filing something within a year because he says he was at the reception center for only about three months before arriving at Solano State Prison. That left him about nine months after he got to Solano State Prison to file his petition.

Assuming that Mendoza spoke Spanish but not English, as suggested by his declaration, what he would need is Spanish speakers who could read English. So far as the declarations show, he had them. He complains that at the prison library, "most" of the inmates were not Spanish speakers, which implies that some were, and he says that "all" spoke English. He had nine months at the prison before limitations ran out, so it is Mendoza's burden to prove that, even with due diligence, extraordinary circumstances prevented him from filing

before the deadline. That raises the question of why he did not enlist any of the bilingual inmates to help him.

He says in his declaration that he "finally" learned of someone who could help him through prison yard conversations and this prisoner wrote his unsuccessful May 2003 petition for him. But, he does not establish that there were no bilingual prisoners before that, and it is hard to believe there were not. It is not as though he spoke some language rare in California like Inupiat.

The 47 declarations by other prisoners that Mendoza filed demonstrate not the absence of an ability to communicate with the court, but its presence. The majority says that Mendoza has shown that he "could not procure the assistance of a translator" during his year, but his submissions show the opposite. Many of his declarants say that they were at Solano State Prison during the entire nine months Mendoza was there before limitations barred Mendoza's claim. All of the declarations are in English, implying that the declarants speak and read English. They nowhere suggest that they could not read English. The inmate declarations Mendoza submitted all say: "I am a Spanish speaking person and Spanish reading person." But Mendoza's declaration does *not* say that he is a "Spanish reading person." He was born in the U.S.A., so it does not go without saying.

Thus, what Mendoza has proved is that he speaks Spanish, and he was surrounded by people who spoke and read English and Spanish throughout the nine months that limitations were running out. All of the declarations complain of the absence of Spanish-language law books in the prison library, but in the absence of evidence that the relevant law books exist or that Mendoza could have read them if they were there, the complaint does not establish even a colorable claim that the absence of Spanish-language law books mattered to Mendoza. He says he did not find any of his many fellow prisoners who could have helped him during his first year of incarceration,

but that excuse is not a level of diligence justifying equitable tolling. Mendoza says he was "very discouraged because of the lack of ability to know anything about my sentence and why I had received so much time," but if he means to refer to linguistic difficulty, as opposed to a broader difficulty in understanding why shooting up a street in Compton got him thrown in prison, discouragement does not excuse doing nothing for a year.

Congress imposed a one year statute of limitations on federal habeas petitions.[3] Equitable tolling is the exception, not the rule.[4] The test is whether " 'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time."[5] "Due diligence" is required of the prisoner to merit tolling,[6] and the prisoner has the burden of establishing his entitlement to tolling.[7]

The majority opinion says Mendoza might be entitled to equitable tolling if he "demonstrate[s] that during the running of the AEDPA time limitation, he was unable, despite diligent efforts, to procure either legal materials in his own language or translation assistance from an inmate, library personnel, or other source." Our creation of a right to one or the other ought to await a case where the facts show that it would have mattered. Mendoza's evidence shows that he had plenty of fellow

---

[3]28 U.S.C. § 2244(d).

[4]*See Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002).

[5]*Calderon v. United States Dis. Ct. for the Centr. Dist. of Cal.(Beeler)*, 128 F.3d 1283, 1288 (9th Cir. 1997), *overruled in part on other grounds*, *Calderon v. United States Dis. Ct. for the Centr. Dist. of Cal.(Kelly)*, 163 F.3d 530 (9th Cir. 1998).

[6]*Allen v. Lewis*, 255 F.3d 798 (9th Cir. 2001); *see also Valverde v. Stinson*, 224 F.3d 129, 133 (2nd Cir. 2000) ("If the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent filing.").

[7]*Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir. 2002).

prisoners who could translate for him. He does not show that relevant Spanish-language legal materials exist.

The authorities do not support the majority's decision. The Supreme Court recently held in *Kane v. Espitia*[8] that there is no right clearly established by a Supreme Court decision to access to a law library at all, let alone one in Spanish. The decision summarily and unanimously reverses a decision in which we had granted a writ because a pro se defendant claimed he had no access to a law library while in jail preparing for trial.[9] In *Whalem/Hunt v. Early*,[10] we held that a prisoner might be entitled to tolling where there was no way he could even find out about the one year statute of limitations in his prison library because it had not been kept up to date, but there, unlike here, there was a record that demonstrated an impediment that the prisoner could not surmount with due diligence.

The majority's reliance on *Cobas v. Burgess* is puzzling.[11] In that case, the inmate argued for equitable tolling "because he was born and raised in Cuba and is unable to understand, read, or write the English language."[12] The Sixth Circuit held against Cobas, not for him, denying him equitable tolling and affirming the dismissal of his habeas petition because it was time barred. "We hold that where a petitioner's alleged lack of proficiency in English has not prevented the petitioner from accessing the courts, that lack of proficiency is insufficient to justify an equitable tolling of the statute of limitations."[13] The court noted that, although Cobas had had an interpreter for his trial, he had sent letters in English, possibly with the

---

[8]*Kane v. Espitia*, ___ U.S. ___, 126 S.Ct. 407 (2005).

[9]*Id.*

[10]*Whalem/Hunt v. Early*, 233 F.3d 1146 (9th Cir. 2000) (en banc).

[11]*Cobas v. Burgess*, 306 F.3d 441 (6th Cir. 2002) *cert. denied Cobas v. Burgess*, 538 U.S. 984 (2003).

[12]*Id.* at 443.

[13]*Id.* at 444.

assistance of a translator.[14] The court held that "[i]n general, the existence of a translator who can read and write English and who assists a petitioner during his appellate proceedings implies that a petitioner will not have a reasonable cause for remaining ignorant of the legal requirements for filing his claim."[15] Under *Cobas* "even his illiteracy does not give a court reason to toll the statute of limitations,"[16] and "we are loath to impose any standards of competency on the English language translator utilized by the non-English speaking habeas petitioner."[17] Were *Cobas* the law of this circuit, *a fortiori* Mendoza would lose on his tolling claim, not win. And the Eleventh Circuit followed the Sixth, in *United States v. Montano*.[18]

There is a real problem, and also a fake one, underlying this case. The real problem is that because inmates are not entitled to appointed counsel for habeas petitions,[19] they have little hope of understanding the myriad subtleties and intricacies of habeas law. It is a subject that challenges the most capable lawyers and judges. The fake problem is the lack of a Spanish-language library in Solano State Prison, where Mendoza has been. This American-born prisoner does not show that he needed a Spanish library, or that he could have read the books in it if they were there, or that he lacked access to fellow prisoners who could read what was there in English and help him with his legal papers. This case appears to be an effort by a jailhouse lawyer, who boasts in his declaration of his own extensive experience in fourteen different prisons in California and the lack of Spanish-language law books in any

---

[14]*Id.*

[15]*Id.* (internal citations omitted).

[16]*Id.*

[17]*Id.*

[18]*United States v. Montano*, 398 F.3d 1276, 1280 n.5 (11th Cir. 2005).

[19]*See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further."); *Miranda v. Castro*, 292 F.3d 1063, 1068 (9th Cir. 2002).

of their libraries. Maybe that is a real problem in some cases, but it is a fake problem in this one because there is no showing that it would have mattered. Mendoza's many filings in English show that he has been able to gain access to the courts. The threshold for equitable tolling under AEDPA is "very high, lest the exceptions swallow the rule."[20] This American-born inmate has not demonstrated a barrier to access to himself (as opposed to others who might, perhaps, understand and read a more exotic language that no other prisoners spoke) that would, if true, entitle him to tolling.

---

[20]*Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (internal citations omitted).