# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*People v. Cruz*, 2013 IL App (1st) 091944

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSE CRUZ, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-09-1944 |
| Modified Rule 23 Order filed | October 26, 2011 |
| Rule 23 Order withdrawn | September 13, 2013 |
| Opinion filed | September 24, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The second-stage dismissal of defendant's postconviction petition alleging that the trial judge used the wrong version of the pattern instruction on the factors to be considered in weighing identification testimony was properly dismissed as untimely, notwithstanding defendant's contention that the late filing was not due to his culpable negligence, since the record supported the conclusion that defendant was culpably negligent in obtaining advice on the due date of his petition from an unnamed prison law clerk who had no specialized knowledge of the law. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 93-CR-25151; the Hon. William G. Lacy, Judge, presiding. |

| Judgment | Affirmed. |
|---|---|
| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Suzan-Amanda Ingram, all of State Appellate Defender's Office, of Chicago, for appellant. |
| | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Miles J. Keleher, and Tracey Annen, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE QUINN delivered the judgment of the court, with opinion. Justice Pierce concurred in the judgment and opinion. Justice Neville dissented, with opinion. |

**OPINION**

¶ 1     Defendant Jose Cruz appeals from the second-stage dismissal of his petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2010)). He contends that the circuit court erred in dismissing his petition where he lacked culpable negligence for its late filing and made a substantial showing that his right to due process was violated by the use of an erroneous version of an Illinois Pattern Jury Instruction. For the following reasons, we affirm.

¶ 2                              BACKGROUND
¶ 3     Around 3:30 a.m. on October 6, 1993, Vernon Meadors walked to a bus stop by a gas station on North Avenue. Antoine Douglas drove into the gas station and got out of his car, wearing a Duke Blue Devils shirt. Another car pulled into the gas station and stopped in front of Douglas. Someone from that car asked whether Douglas was a Disciple. Douglas said he was a Vice Lord. Several men emerged from the car and Douglas ran off. When the men started shooting at Douglas, Meadors hit the ground. After the shooting stopped, someone yelled, "Witness." One of the men shot Meadors in the arm, but additional pulls on the trigger produced no bullets. The men drove off. Police arrived minutes later and found Douglas dead from multiple gunshot wounds.

¶ 4     Doctors at a nearby hospital treated Meadors and released him. Police showed Meadors an array of photographs, including some pictures of local gang members, but Meadors did not identify any of the photos as pictures of the men he saw shooting at Douglas. Meadors and his family moved out of the area near the shooting. On October 8, 1993, two days after

the shooting, Meadors returned to the police station and identified a picture of Cruz as a picture of the man he saw asking Douglas about his gang affiliation, and as one of the men who shot at Douglas.

¶ 5    Police arrested Cruz, who admitted that he belonged to the Latin Kings. Meadors identified Cruz in a lineup as the person he saw in the car at the gas station, and as one of the men he saw shooting Douglas. A grand jury indicted Cruz for the murder of Douglas and for the attempted murder of Meadors.

¶ 6    At the trial, held in 1995, prosecutors presented an expert on gangs to explain the shooting. The expert said that Latin Kings control the area near the shooting. Latin Kings participate in a loose alliance with Vice Lords, but they view Disciples as enemies. Disciples wear Duke Blue Devil clothing to show their gang affiliation. Another officer testified that when he questioned Cruz, Cruz admitted that if he saw a Disciple in Latin King territory, Cruz would "beat him, stab him, shoot him, whatever it takes to get him out of there."

¶ 7    Meadors testified that he saw Cruz's face clearly from about 15 feet away, in very good lighting, when Cruz asked Douglas about his gang affiliation. Meadors did not get a good view of the other men in the car. After police arrived at the scene, a young Hispanic man walked up to Meadors and looked at him in a way Meadors found threatening. Meadors decided not to identify Cruz at that time, but after his family moved, he made the identification.

¶ 8    The trial court instructed the jury, without objection:

"When you weigh the identification testimony of a witness, you must consider all of the facts and circumstances and evidence, including but not limited to the following. The opportunity the witness had to view the offender at the time of the offense; or the witness' degree of attention at the time of the offense; or, the witness's earlier description of the offender; or, the level of certainty shown by the witness when confronting the defendant; or the length of time between the offense and the identification confrontation."

¶ 9    The jury found Cruz guilty of murder and attempted murder. The trial court sentenced Cruz to 60 years in prison for the murder, and 30 years for the attempted murder, with the sentences to run consecutively.

¶ 10    On direct appeal, defense counsel argued that Cruz did not receive a fair trial because the court permitted the State to introduce evidence of other crimes and to use inadmissible evidence to bolster Meadors's testimony, and the State made improper assertions in closing argument. Counsel raised no issue concerning the jury instructions or ineffective assistance of trial counsel. The appellate court affirmed the trial court's judgment. *People v. Cruz*, No. 1-96-0575 (Aug. 31, 1998) (unpublished order under Supreme Court Rule 23).

¶ 11    On June 2, 1999, Cruz filed a postconviction petition in which he argued that he received ineffective assistance of trial and appellate counsel. The trial court dismissed the petition as untimely, without appointing counsel to assist Cruz with the petition. The appellate court reversed and remanded for the appointment of counsel to assist Cruz with his postconviction petition and to advance the case to the second stage of postconviction proceedings, pursuant to the holding in *People v. Boclair*, 202 Ill. 2d 89, 99 (2002). *People v. Cruz*, No. 1-99-3215

(May 30, 2003) (unpublished order under Supreme Court Rule 23).

¶ 12 On May 6, 2004, counsel was appointed to represent Cruz. On June 21, 2007, however, the court granted Cruz's motion to proceed *pro se* and discharged his appointed counsel. Then, on January 17, 2008, Cruz withdrew his prior postconviction petition and filed an amended petition in which he added an allegation that he did not receive a fair trial because the trial court used an erroneous instruction concerning the factors to consider when weighing identification testimony.

¶ 13 Cruz also filed another amendment to his postconviction petition to explain his delay in filing the original petition. He stated:

"[I am] illiterate in law, has poor comprehension and border line illiterate, and english is not fluent at all. There-fore, I have had to rely on the advice of other jail house lawyers, including the law clerks assigned to Stateville Corr. Ctr. Law Library *** who told me that I had (6) six months after the denial of my Petition for Leave to Appeal to the Illinois Supreme Court to file my Post Conviction Petition."

Because the Illinois Supreme Court denied his petition for leave to appeal on December 2, 1998 (*People v. Cruz*, 181 Ill. 2d 577 (1998) (table)), Cruz concluded that he could file his postconviction petition anytime before June 3, 1999. In fact, the statute made the petition due, at the latest, three years after the conviction, so that Cruz's time for filing expired on January 30, 1999. See 725 ILCS 5/122-1(c) (West 1998). Cruz alleged that due to his difficulty reading English, he needed to rely on prison staff to let him know the filing date, and he needed the help of a jailhouse lawyer to prepare his postconviction petition. He further alleged that "Stateville's Law Clerk are [*sic*] not properly trained, many of whom does [*sic*] not have the proper paralegal certification to even work as a law clerk." He also explained:

"[H]ere at Stateville Law Library there is a rotating system where every (6) six months prisoners are re-assigned to another job assignment. which means a prisoner who may have or may have not the proper certification to work at the Law Library may be assigned to the prison's Laundry, and the prisoner will likewise be assigned to the Law Library to work as a Law Clerk."

¶ 14 The State moved to dismiss the amended postconviction petition as untimely and insufficient. On July 10, 2009, the trial court granted the State's motion, finding the petition untimely because Cruz failed to allege facts to show that he did not act with culpable negligence when he filed his postconviction petition four months late. The court also found the petition and its supplements insufficient to warrant an evidentiary hearing. The court did not directly address the argument concerning the improper instruction. Cruz appealed.

¶ 15 In the appeal, the State argued that this court should affirm the dismissal of Cruz's petition because Cruz did not support his allegations about the lack of culpable negligence with a notarized affidavit. This court agreed with the State. *People v. Cruz*, 2011 IL App (1st) 091944-U, ¶ 23. Our supreme court reversed our judgment, holding that the State forfeited its objection to the lack of a notarized affidavit by failing to raise the issue in the trial court. *People v. Cruz*, 2013 IL 113399, ¶ 25. Our supreme court remanded the case for us to review the other issues raised in the appeal from the dismissal of Cruz's postconviction petition. We

-4-

now address the issues we left unresolved in our initial disposition of this appeal.

¶ 16                                    ANALYSIS

¶ 17        The Act provides a mechanism by which a criminal defendant may assert that his conviction was the result of a substantial denial of his constitutional rights. *People v. Delton*, 227 Ill. 2d 247, 253 (2008). At the second stage of proceedings, defendant has the burden of making a substantial showing of a constitutional violation. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). A petition may be dismissed at this stage only where the allegations, liberally construed in light of the trial record, fail to make such a showing. *People v. Hall*, 217 Ill. 2d 324, 334 (2005). All well-pleaded facts that are not positively rebutted by the record are to be taken as true. *Pendleton*, 223 Ill. 2d at 473. We review *de novo* the dismissal of a petition without an evidentiary hearing. *Hall*, 217 Ill. 2d at 334.

¶ 18        Defendant first contends that the circuit court erred in dismissing his postconviction petition where he was not culpably negligent for its untimely filing. Postconviction proceedings may not be commenced outside the time limitations of the Act unless defendant alleges sufficient facts to show the delay in filing was not due to his culpable negligence. *People v. Lander*, 215 Ill. 2d 577, 586 (2005) (citing 725 ILCS 5/122-1(c) (West 2000)). Culpable negligence "contemplates something greater than ordinary negligence and is akin to recklessness." *People v. Boclair*, 202 Ill. 2d 89, 108 (2002).

¶ 19        In the case at bar, there is no dispute that defendant's petition was untimely. Defendant claims, however, that he was not culpably negligent for the untimely filing because he is illiterate and reasonably relied on a prison law clerk's erroneous advice as to the due date for his petition. The State responds that defendant's reliance on an unnamed prison law clerk, whom he admits had no specialized knowledge of the law, demonstrates that he was culpably negligent.

¶ 20        We find the disposition of this appeal to be controlled by our supreme court's decision in *Lander*. There, the supreme court rejected a defendant's claim on appeal that he was not culpably negligent for the untimely filing of his postconviction petition because he reasonably relied on the erroneous advice of a prison law clerk and several "jailhouse lawyers" as to the filing deadline. *Lander*, 215 Ill. 2d at 586-87. In doing so, it distinguished *People v. Rissley*, 206 Ill. 2d 403 (2003), a case where it found a defendant was not culpably negligent for the late filing of his petition "because he reasonably relied on the advice of his attorney on direct appeal, a person who had obvious expertise in legal matters and, in particular, criminal appeals." *Lander*, 215 Ill. 2d at 587-88 (citing *Rissley*, 206 Ill. 2d at 421). The supreme court noted that, unlike *Rissley*, defendant failed to allege that the people on whom he relied for advice were hired to assist inmates with postconviction matters or "had any particular training in postconviction matters providing them with specialized knowledge of the filing deadline for a postconviction petition." *Lander*, 215 Ill. 2d at 588. Moreover, noted the court, defendant sought advice concerning the filing deadline from a librarian after having previously received advice on the same matter from jailhouse lawyers and a law clerk, showing that he questioned their advice. *Lander*, 215 Ill. 2d at 588. Ultimately, the supreme court concluded:

"It is well settled that all citizens are charged with knowledge of the law. [Citation.] Ignorance of the law or legal rights will not excuse a delay in filing a lawsuit. [Citation.] Thus, the sole obligation of knowing the time requirements for filing a postconviction petition remains with the defendant. Defendant's entrustment of this responsibility to jailhouse lawyers, a prison law clerk, and a law librarian who had no proven specialized knowledge in postconviction matters shows an indifference to the consequences likely to follow from his actions.

We caution that our determination in this regard is fact-specific and is not amenable to an easily defined standard or rule. Rather, each case must be examined on its own facts. Based on the specific facts of this case, we conclude defendant's reliance on the advice of jailhouse lawyers, a law clerk, and a law librarian is insufficient to establish the delay in filing was not due to defendant's culpable negligence." *Lander*, 215 Ill. 2d at 588-89.

¶ 21     The circumstances in the case at bar are nearly identical to those in *Lander*. Here, defendant filed an untimely postconviction petition and claimed that the late filing was due to his reliance on a prison law clerk's erroneous advice as to the time requirements of the Act. However, the record shows that he was fully aware that prison law clerks have no specialized legal knowledge and were assigned to the law library without any consideration as to their qualifications. Applying *Lander* to these facts, defendant's reliance on the advice of the prison law clerk was clearly insufficient to establish that his delay in filing his petition was not due to his culpable negligence. *Lander*, 215 Ill. 2d at 589.

¶ 22     This conclusion comports with additional case law as well. In *People v. Walker*, 331 Ill. App. 3d 335, 340 (2002), defendant filed untimely postconviction petitions and claimed that his late filing was occasioned by a two-year lockdown at the prison, during which time he was prohibited from meeting with an inmate paralegal to prepare a petition. This court affirmed the dismissal of the petitions as untimely, noting that defendant failed to explain how the alleged lockdown impeded his ability to file a timely petition or how a meeting with an inmate paralegal would have facilitated the timely filing of his petitions. *Walker*, 331 Ill. App. 3d at 341-42.

¶ 23     In *People v. Williams*, 394 Ill. App. 3d 236, 244 (2009), defendant requested leave to file a successive postconviction petition, claiming that "his original postconviction petition was prepared by a fellow inmate who deliberately failed to raise claims requested by the defendant." Defendant attached an affidavit from that inmate in which the inmate averred that he was not getting along with defendant and purposely did not raise certain issues. *Williams*, 394 Ill. App. 3d at 241. Relying on *Lander*, this court affirmed the denial of defendant's motion for leave to file his successive petition, noting: "We conclude that the defendant failed to establish that his reliance on [his fellow inmate] for the preparation of his original postconviction petition was reasonable and did not establish 'cause' for purposes of section 122-1(f)." *Williams*, 394 Ill. App. 3d at 245.

¶ 24     Most recently, in *People v. Evans*, 2013 IL 113471, ¶ 13, our supreme court followed *Lander* in another case affirming the denial of a motion for leave to file a successive postconviction petition. There, the supreme court noted that it "has made very clear that 'all

citizens are charged with knowledge of the law' and that '[i]gnorance of the law or legal rights will not excuse a delay in filing a lawsuit.' " *Evans*, 2013 IL 113471, ¶ 13 (quoting *Lander*, 215 Ill. 2d at 588). It noted, however, that "ignorance of the law is precisely the 'cause' that defendant asserts here to justify his failure to include the present claim in his initial postconviction petition." *Evans*, 2013 IL 113471, ¶ 13.

¶ 25        Given the outcome of these cases, there can be no doubt that it is defendant who bears the ultimate responsibility of ensuring that he timely files his postconviction petition. Defendant nonetheless attempts to avoid the result in *Lander* by citing the supreme court's admonishment that each case must be examined on its own facts. Noting his alleged illiteracy, defendant claims that in the instant case he may never have filed anything without the help of other inmates. He also claims that, compared to him, the other inmates had specialized knowledge in that they were literate.

¶ 26        Initially, we note that defendant's claims of illiteracy, poor comprehension, and lack of fluency in English are highly dubious. According to his presentence investigation report, defendant attended elementary school in Puerto Rico from kindergarten through sixth grade before graduating in 1985. He also attended another school for seventh grade and attended "Sister Isolind Ferre Center" from 1986 to 1987 to obtain his GED, though he never took the required test. While defendant claims that nothing about his education in Puerto Rico would demonstrate that he was literate in the English language, other indications of his literacy and fluency in English nonetheless abound. For instance, the record is replete with *pro se* documents–though defendant suggests these could have been typed or handwritten by others. Defendant also discharged his appointed post-conviction counsel and proceeded *pro se* on his petition, apparently confident in his ability to carry out the functions of self-representation, *i.e.*, reading and preparing documents and communicating with the court. Finally, at the hearing on the State's motion to dismiss, defendant positively revealed his ability to read and speak English during the following exchange:

> "THE COURT: Okay. Thank you.
>
> Mr. Cruz, do you wish to respond?
>
> THE DEFENDANT: Yes, Your Honor. I have got a written response, please–
>
> THE COURT: A written response? You are filing something else again?
>
> THE DEFENDANT: No, I am not filing something. No, I am reading–
>
> THE COURT: Oh, you just want to read it to me.
>
> THE DEFENDANT: No, I am reading–this is my argument. My argument is written down.
>
> THE COURT: Okay. Go ahead."

Whereupon defendant proceeded to *read* his argument to the court–in *English*. Under the circumstances, defendant's claims of illiteracy, poor comprehension, and lack of fluency in English are simply incredible.

¶ 27        That said, even if defendant is illiterate, we still find that he was culpably negligent for the untimely filing of his petition. The fact remains that defendant relied on the advice of a prison law clerk, whom he knew had no specialized knowledge of postconviction matters,

to ascertain the filing date for his petition. Clearly, he should have been prepared for not just the possibility, but the probability, that he would be misadvised as to the law, yet he did not seek out more reliable advice and proceeded to file his petition late. He now must accept the consequences of his imprudence, as the Act does not make exceptions for defendants who are illiterate and/or do not speak fluent English.

¶ 28    Defendant also attempts to distinguish his case from *People v. Hampton*, 349 Ill. App. 3d 824, 828 (2004), where the defendant filed his postconviction petition 56 months late. There, the court noted that "[w]hile the length of the delay alone is not dispositive, it stands to reason that a defendant who waits nearly five years beyond the statutory deadline to file a petition has more explaining to do than one who is late by less than a week." *Hampton*, 349 Ill. App. 3d at 828. Defendant points out that his petition was only five months late, and that the State was not prejudiced by the delay considering that his case "wound its way though the courts for a decade."

¶ 29    We find defendant's reliance on *Hampton* to be misplaced. First, the mere fact that defendant's petition was not filed as late as the one in *Hampton* does not mean that he was not culpably negligent in the case at bar. Second, whether or not the State was prejudiced by the delay is irrelevant. The Act sets forth time limitations for the filing of a postconviction petition, and defendant must either comply with those limitations or establish that he was not culpably negligent for his untimely filing. Since defendant did neither, the circuit court properly dismissed his petition as untimely.

¶ 30    In his well-reasoned dissent, Justice Neville cites several federal court decisions addressing allegations raised by petitioners seeking equitable tolling in *habeas corpus* proceedings. In *Mendoza v. Carey*, 449 F.3d 1065, 1070 (9th Cir. 2006), the court considered the holding in *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002), where the court found that "[b]ecause Cobas had written a detailed letter to his counsel in English and had otherwise demonstrated his ability to either communicate in English or communicate with a translator, the record in Cobas' case 'belie[d] any claim that language difficulties prevented Cobas from filing his petition in a timely manner.' " The *Cobas* court also held that the "existence of a translator who can read and write English and who assists a petitioner during appellate proceedings" renders equitable tolling inapplicable to that petitioner. *Cobas*, 306 F.3d at 444. The *Mendoza* court noted that "[o]ur conclusion is completely consistent with the Supreme Court's recent decision addressing law library access rights. *Kane v. Garcia Espitia*, 546 U.S. 9, 10, 126 S. Ct. 407, 408, 163 L. Ed. 2d 10 (2005) (per curiam), held that the denial of access to a law library cannot provide a basis for a *pro se* petitioner's habeas relief because no Supreme Court case clearly establishes a *pro se* petitioner's constitutional right to law library access." *Mendoza*, 449 F.3d at 1070.

¶ 31    The *Mendoza* court also considered *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004), which applied "*Cobas*' reasoning and conclud[ed] that the petitioner's 'excellent' English skills and ability to compose, without assistance, court filings in English, foreclosed any contention that lack of English proficiency justified equitable tolling." *Mendoza*, 449 F.3d at 1070. The majority in *Mendoza* said "the record contains *no* indication that Mendoza could communicate in English." (Emphasis in original.) *Mendoza*, 449 F.3d at 1070 n.4.

¶ 32    In the instant case, the first indication that Cruz is not completely proficient in English came in 2008, when Cruz raised the assertion in an amendment to his postconviction petition. At his arraignment in 1993, Cruz told the court that he spoke English. No interpreter was used by Cruz during his trial in 1995. The record contains letters to and from Cruz to a private lawyer with whom Cruz disagreed as to the merits of filing a postconviction petition. The record also contains a 20-page transcript of a proceeding on June 21, 2007, during which Cruz fired his public defender, who had represented him for three years. Cruz speaks English fluently throughout the proceeding, and he filed an 82-page *habeas corpus* petition that he asked to proceed on. Cruz had been writted in so he could presumably inform the postconviction court whether he wished to continue to be represented by appointed counsel or proceed *pro se*. After a lengthy discussion (in English) on the record, Cruz asked that the public defender be discharged. At no time did Cruz express a concern that he would not be competent to represent himself.

¶ 33    The dissent is quite correct in reciting the holding in *Pabon v. Mahanoy*, 654 F.3d 385 (3d Cir. 2011). However, the *Pabon* court noted that "Pabon has maintained from the time of his arrest that he reads, writes, and understands only Spanish. *** Pabon used a court translator for pre-trial hearings and during the trial." *Pabon*, 654 F.3d at 389 & n.3. Again, the first time Cruz raised any question regarding his fluency in English was in a 2008 filing, 15 years after he was arraigned and 13 years after his conviction. Cruz did not raise any such allegation in his postconviction petition which he filed in 1999. No such allegation was raised by Cruz's attorneys in 2001 when they appealed the dismissal of his petition based on its untimeliness.

¶ 34    Finally, the dissent's citation to *Diaz v. Kelly*, 515 F.3d 149, 154-55 (2d Cir. 2008), merits some discussion. There, Angel Diaz and Yoke Yew Tan, in separate cases, argued that the one-year limitations period for filing a *habeas corpus* petition found in the Antiterrorism and Effective Death Penalty Act of 1996 (28 U.S.C. § 2244(d) (2006)) should have been equitably tolled on the basis of petitioners' lack of proficiency in the English language. The *Diaz* court rejected these arguments, holding:

> "This is not to say, however, that language deficiency must be remedied by the State in any sense comparable to the obligation, grounded in the Sixth Amendment, to provide an interpreter at trial. See *United States ex rel. Negron v. New York*, 434 F.2d 386, 389-90 (2d Cir. 1970). On the contrary, the diligence requirement of equitable tolling imposes on the prisoner a substantial obligation to make all reasonable efforts to obtain assistance to mitigate his language deficiency.

> Neither Diaz nor Tan have alleged efforts that satisfy the diligence requirement. Both have claimed nothing more than the unavailability of personnel within their prisons who could translate for them during the applicable limitations periods. There is no allegation of any efforts to contact anyone outside the prison who might assist in making them aware, in their language, of legal requirements for filing a habeas corpus petition, nor what efforts were made to learn of such requirements within their places of confinement. Equitable tolling was properly rejected in their cases." *Diaz*, 515 F.3d at 154.

¶ 35    A reading of the cases cited in the dissent and the cases cited by them supports our

-9-

conclusion that Cruz has utterly failed to meet his burden of showing that the late filing of his postconviction petition was not due to his own culpable negligence. Given our disposition in this case, we need not address defendant's remaining claim.

¶ 36    For the reasons stated, we affirm the second-stage dismissal of defendant's post-conviction petition by the circuit court of Cook County.

¶ 37    Affirmed.

¶ 38    JUSTICE NEVILLE, dissenting.

¶ 39    I respectfully dissent. In my opinion, Cruz adequately alleged facts showing that the delay in filing his postconviction petition did not result from his culpable negligence, and he has made a substantial showing of a constitutional violation. Accordingly, I would reverse the dismissal of Cruz's postconviction petition and remand for an evidentiary hearing at the third stage of proceedings on the petition.

¶ 40                              Culpable Negligence

¶ 41    The majority correctly acknowledges that the Act permits a petitioner to file a late postconviction petition if "the petitioner alleges facts showing that the delay was not due to his or her culpable negligence" (725 ILCS 5/122-1(c) (West 2010)), and that we must accept as true all facts well-pleaded in the petition, unless the record positively contradicts them. *Lander*, 215 Ill. 2d at 586. Cruz's completion of the seventh grade in Puerto Rico does not prove his literacy in English, especially to the extent needed to read and understand the Act. Cruz alleged that he sought help from jailhouse lawyers, who may have drafted his *pro se* submissions to the court. The majority relies on Cruz's ability to read a document to the court in English as sufficient to disprove the allegations of the petition. However, the ability to enunciate the words does not prove understanding. The trial court could more completely address the question of Cruz's ability to read and understand English at an evidentiary hearing. For purposes of this appeal, I would accept as true Cruz's allegation that he is "illiterate in law" and not fluent in English, and therefore he relied on the advice of jailhouse lawyers and library clerks. I would address the issue of whether Cruz has "allege[d] facts showing that the delay [in filing his postconviction petition] was not due to his *** culpable negligence." 725 ILCS 5/122-1(c) (West 2010).

¶ 42    Our supreme court explained the applicable standard:

"Culpable negligence has been defined as '[n]egligent conduct that, while not intentional, involves a disregard of the consequences likely to result from one's actions.' Black's Law Dictionary 1056 (7th ed. 1999). Culpable negligence has also been defined as 'something more than negligence' involving 'an indifference to, or disregard of, consequences.' 65 C.J.S. *Negligence* § 19 (2000). Accord 1 R. Rawle, Bouvier's Law Dictionary 736 (3d rev. 1914) (stating that 'culpable neglect would seem to convey the idea of neglect for which he was to blame as is ascribed to his own carelessness, improvidence or folly').

-10-

* * *

*** [I]n *Holway v. Ames*, 100 Me. 208, 60 A. 897 (1905), the Supreme Judicial Court of Maine defined 'culpable neglect' in an analogous context as 'less than gross carelessness, but more than the failure to use ordinary care.' *Holway*, 100 Me. at 211, 60 A. at 898. In other contexts, other courts have defined culpable negligence as something more than mere neglect or more than a mere failure to use ordinary care. *E.g.*, *Ross v. Baker*, 632 So. 2d 224, 226 (Fla. App. 1994) (holding that '[c]ulpable negligence is negligence of a gross and flagrant character which evinces a reckless disregard for the safety of others'); *State v. Giordano*, 138 N.H. 90, 95, 635 A.2d 482, 484 (1993) (stating that '[c]ulpable negligence is something more than ordinary negligence, mere neglect, or the failure to use ordinary care–it is negligence that is censorious, faulty or blameable').

*** We find that the 'culpably negligent' standard contained in section 122-1(c) contemplates something greater than ordinary negligence and is akin to recklessness." *People v. Boclair*, 202 Ill. 2d 89, 106-08 (2002).

¶ 43    The majority holds that our supreme court's decision in *Lander* controls our decision in this case. I find this case distinguishable from *Lander* because Cruz alleged facts explaining his need to rely on persons who could read and understand English, at a time when he did not have an attorney to assist him with understanding the statute.

¶ 44    Federal courts have confronted similar issues in the context of *habeas corpus* proceedings. In *Pabon v. Mahanoy*, 654 F.3d 385 (3d Cir. 2011), the district court dismissed Pabon's petition for a writ of *habeas corpus* as untimely. Pabon admitted that he missed the statutory filing deadline, but he asked the court to apply equitable tolling because Pabon could not read, speak or write English and the prison denied his request for translation assistance. For equitable tolling, the prisoner needed to show that extraordinary circumstances stood in the way of timely filing, and the prisoner acted with due diligence. The *Pabon* court held:

"[I]nability to read or understand English, combined with denial of access to translation or legal assistance, can constitute extraordinary circumstances that trigger equitable tolling. *** [W]e note that the relevant inquiry is not whether the circumstance alleged to be extraordinary is unique to the petitioner, but how severe an obstacle it creates with respect to meeting [the statutory] deadline." *Pabon*, 654 F.3d at 400-01.

The *Pabon* court held that the district court needed to hold an evidentiary hearing on Pabon's petition to determine whether to allow equitable tolling of the statutory filing deadline.

¶ 45    Other courts reached similar conclusions about the effect of illiteracy in English on the right to equitable tolling in *Diaz v. Kelly*, 515 F.3d 149, 154 (2d Cir. 2008), *Mendoza v. Carey*, 449 F.3d 1065, 1069 (9th Cir. 2006), and *Fell v. Rafferty*, 736 F. Supp. 623, 628 (D.N.J. 1990). Cruz need not meet the rigorous standards for showing a right to equitable tolling. Instead, he must meet the less stringent requirement of showing that he did not act with culpable negligence.

¶ 46    Along with the authority of *Pabon*, *Diaz*, *Mendoza* and *Fell*, like the *Boclair* court, I would look to cases that interpret "culpable negligence" in other contexts. In *Kinney v.*

*Ensmenger*, 6 So. 72, 73 (Ala. 1889), the court held:

> "The complainant's illiteracy and inability to understand the English language, coupled with his probable confidence in his trusted agent, Harrison, who acted for him in negotiating the sale, are *prima facie* sufficient, under the facts of this case, to acquit him of such culpable negligence in failing to be informed as to the contents of the deed and notes as would prevent him from obtaining relief in a court of equity."

See also *Klabunde v. Byron-Reed Co.*, 98 N.W. 182, 186 (Neb. 1904).

¶ 47  A person may even find relief from the terms of a contract he signed, if he needed to rely on another person to translate the contract for him, and the translator misread some of the contract terms. Corpus Juris says, "where a person cannot read the language in which a contract is written, it is ordinarily as much his duty to procure some person to read and explain it to him before he signs it as it would be to read it before he signed it if he were able so to do." 13 C.J. 372. Applying the rule stated in Corpus Juris, the court in *Keystone Pipe & Supply Co. of Texas v. Kleeden*, 299 S.W. 671, 673 (Tex. App. 1927), said, "It is not alleged that plaintiff's representative, who executed the contract for plaintiff company, made any false representations as to the contents of the writing, nor that Kleeden, who represented the defendants, was illiterate, nor that there was any confidential relation existing between the parties who actually executed it." Thus, illiteracy in English, coupled with a misrepresentation to the petitioner about the contents of a crucial document, like the Act here, can excuse a petitioner's misunderstanding of the document and provide grounds for relief from the usual consequences of failure to comply with some provision of the document.

¶ 48  Under the reasoning of *Pabon* and other cases concerning culpable negligence, in the specific circumstances of this case, where the defendant has alleged functional illiteracy in English, his reliance on the advice of jailhouse lawyers and library clerks does not show blameable or censorious conduct, indifference to the consequences of his acts, or more than ordinary negligence. See *People v. Rissley*, 206 Ill. 2d 403, 419-22 (2003); *Boclair*, 202 Ill. 2d at 106-08. Interpreting "culpable negligence" in light of our supreme court's pronouncement that we should construe the Act "liberally *** to afford a convicted person an opportunity to present questions of deprivation of constitutional rights" (*People v. Correa*, 108 Ill. 2d 541, 546 (1985)), Cruz has adequately alleged facts showing that the delay in filing his postconviction petition did not result from his culpable negligence.

¶ 49                                   Identification Instruction

¶ 50  Because I find the allegations of the petition sufficient to show a lack of culpable negligence, I would reach the issue of whether Cruz has met his burden of making a substantial showing of a constitutional violation. See *People v. Hall*, 217 Ill. 2d 324, 334 (2005). Cruz argues that he showed that he received ineffective assistance of appellate counsel when appellate counsel failed to argue that he received ineffective assistance of trial counsel when trial counsel failed to object to the erroneous identification instruction.

¶ 51  The State contends that the amended postconviction petition does not adequately raise the issue Cruz asks us to address on this appeal, because Cruz did not specifically list the

failure to raise the insufficiency of the identification instruction as a reason to find that he did not receive effective assistance of appellate counsel. The State acknowledges that in his postconviction petition, Cruz raises two related issues: the erroneous identification instruction, and the ineffective assistance of appellate counsel for failing to argue ineffective assistance of trial counsel. The State's hypertechnical reading of Cruz's postconviction petition does not accord with the policies underlying the Act. See *Rissley*, 206 Ill. 2d at 420-21. The identification instruction issue arises as part of Cruz's claim that he received ineffective assistance of appellate counsel when his counsel for the appeal failed to argue ineffective assistance of trial counsel. See *People v. Winsett*, 153 Ill. 2d 335, 346 (1992); *People v. Mahaffey*, 194 Ill. 2d 154, 171 (2000), *overruled on other grounds by People v. Wrice*, 2012 IL 111860, ¶ 75.

¶ 52 To show ineffective assistance of appellate counsel, a defendant must show that appellate counsel made an objectively unreasonable decision not to raise an issue on direct appeal, and that the failure to raise the issue prejudiced the defendant. *People v. Wilder*, 356 Ill. App. 3d 712, 719 (2005).

¶ 53 Illinois Pattern Jury Instructions, Criminal, No. 3.15 (3d ed. 1992) (hereinafter IPI Criminal 3d No. 3.15), states:

"When you weigh the identification testimony of a witness, you should consider all the facts and circumstances in evidence, including, but not limited to, the following:

[1] The opportunity the witness had to view the offender at the time of the offense.

[or]

[2] The witness's degree of attention at the time of the offense.

[or]

[3] The witness's earlier description of the offender.

[or]

[4] The level of certainty shown by the witness when confronting the defendant.

[or]

[5] The length of time between the offense and the identification confrontation."

¶ 54 The User's Guide explains:

"A bracketed 'or' ('[or]') is used when the user must choose between alternative paragraphs or propositions that may be given as part of the instruction when more than one alternative is applicable." Illinois Pattern Jury Instructions, Criminal, User's Guide, at XXIII (3d ed. 1992).

¶ 55 The example in the 1992 edition for the use of the instruction does not include "or" between the listed factors. See *People v. Brookins*, 333 Ill. App. 3d 1076, 1083 (2002). The Committee Notes for the instruction cite three cases as the source for the instruction. See *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977); *People v. Manion*, 67 Ill. 2d 564, 571 (1977); *People v. Slim*, 127 Ill. 2d 302, 308 (1989). All three cases, which predate the 1995 trial here, indicate that the trier of fact should consider all of the applicable factors when assessing the reliability of an eyewitness identification of the defendant as the offender.

¶ 56　　The trial court listed all of the factors and inserted "or" between the factors when the court instructed the jury. As our supreme court explained in *People v. Herron*, 215 Ill. 2d 167, 191 (2005):

> "If the instruction initially directs jurors to consider all the facts and circumstances surrounding the identification, but then, through the use of the conjunction 'or,' directs jurors to consider one of five factors regarding the reliability of the identification, then the instruction contains an internal inconsistency. It is ambiguous and misleading ***."

¶ 57　　Our supreme court in *Herron* held that the trial court in that case committed plain error when it instructed the jury on the factors listed in IPI Criminal 3d No. 3.15 and inserted the word "or" between the factors. See *Herron*, 215 Ill. 2d at 191. Trial counsel here did not challenge the plain error the trial court committed when the court gave the instruction with "or" between the factors. Appellate counsel failed to raise trial counsel's failure to object to the erroneous instruction as grounds for finding that Cruz received ineffective assistance of counsel at his trial.

¶ 58　　The State cites *People v. Chatman*, 357 Ill. App. 3d 695 (2005), in support of the trial court's decision to dismiss the petition here. The postconviction petitioner in *Chatman* similarly claimed that his trial and appellate counsel provided ineffective assistance because they failed to challenge use of IPI Criminal 3d No. 3.15 with "or" inserted between the listed factors. The petitioner in *Chatman* relied solely on *People v. Gonzalez*, 326 Ill. App. 3d 629 (2001), as authority for finding counsel ineffective. The appellate court noted that the decision in *Gonzalez* came down after the direct appeal in *Chatman*. The appellate court held that trial and appellate counsel need not anticipate changes in the law, and their failure to anticipate *Gonzalez* did not show ineffective assistance.

¶ 59　　Here, Cruz, unlike the petitioner in *Chatman*, does not rely on *Gonzalez* to show that counsel provided ineffective assistance. Instead he relies on the sources cited in *Gonzalez*, which show that the decision in *Gonzalez* did not change the law. In particular, the Committee Notes and User's Guide to the pattern instructions, together with the sample and the supporting case law, all show that the trier of fact must consider all of the applicable factors. An attorney may provide ineffective assistance if he fails to read and consider the Committee Notes, sample instructions and supporting case law when faced with a proposed jury instruction. See *Lotero v. People*, 203 Ill. App. 3d 160, 163 (1990); *United States v. DeCoster*, 487 F.2d 1197, 1204 (D.C. Cir. 1973) (counsel has a duty to research the applicable law). In my opinion, Cruz has adequately alleged facts showing that trial counsel provided objectively unreasonable assistance by failing to oppose the erroneous instruction, and appellate counsel provided objectively unreasonable assistance by failing to raise the issue of trial counsel's ineffective assistance on the direct appeal.

¶ 60　　Appellate counsel's failure to raise on direct appeal the issue of trial counsel's ineffective assistance constitutes ineffective assistance of appellate counsel only if raising the issue would have created a reasonable probability that Cruz could have obtained a reversal of his conviction. Here, the conviction hinged on the identification testimony of a single eyewitness who, for less than a minute, saw the offender who questioned Douglas. The witness admitted that he could not identify any of the accomplices who accompanied the offender in the car,

and that he did not know Cruz before the encounter at the gas station. No physical evidence connected Cruz to the murder scene. Because the State did not present overwhelming evidence of guilt, where a single eyewitness saw the offender for only a few seconds and did not previously know the offender, I find a reasonable likelihood that the appellate court would have reversed Cruz's conviction if appellate counsel had argued that trial counsel provided ineffective assistance when counsel failed to object to the erroneous instruction on the assessment of identification testimony. See *People v. Piatkowski*, 225 Ill. 2d 551, 570 (2007).

¶ 61                                         Conclusion

¶ 62       Cruz sufficiently alleged facts showing that he did not act with culpable negligence when he failed to timely file his postconviction petition. Cruz also presented sufficient evidence to require an evidentiary hearing on his allegation that he received ineffective assistance of appellate counsel because appellate counsel failed to argue on direct appeal that Cruz received ineffective assistance of trial counsel when trial counsel failed to object to an erroneous and prejudicial instruction concerning the State's identification testimony. I would reverse the dismissal of Cruz's postconviction petition and remand for an evidentiary hearing at the third stage of proceedings on the petition. Accordingly, I dissent.