**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230282-U

Order filed July 18, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-23-0282 Circuit No. 03-CF-1389 |
| | ) | |
| EMILIO ESTRADA, | ) ) | Honorable Daniel D. Rippy, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE PETERSON delivered the judgment of the court.
Justices Hettel and Albrecht concurred in the judgment.

_____

**ORDER**

¶ 1        *Held*:   Defendant's postconviction petition was properly dismissed as untimely.

¶ 2        Defendant, Emilio Estrada, appeals from the second-stage dismissal of his postconviction petition. Defendant asserts that the Will County circuit court erred in dismissing his petition as untimely because he was not culpably negligent. Defendant further claims that he made a substantial showing that his constitutional rights were violated and seeks remand for an evidentiary hearing on the merits of his petition. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4         On June 15, 2005, defendant was charged by indictment with two counts of first degree murder (720 ILCS 5/9-1(a)(1), (2) (West 2002)), arson (*id.* § 20-1(a)), and concealment of a homicidal death (*id.* § 9-3.1(a)). The charges alleged that on September 10, 2003, defendant fatally stabbed Felipe Ulloa before placing his body inside Ulloa's vehicle and setting it on fire.

¶ 5         During the early stages of the proceedings, at a status hearing held on July 19, 2005, a Spanish speaking interpreter was present in the courtroom after defense counsel stated that defendant did not speak English. At the next hearing on August 23, 2005, defense counsel indicated that defendant did not need an interpreter because he understood English "fairly well." During the next hearing on September 23, 2005, the State noticed the presence of an interpreter in the courtroom and requested confirmation that defendant had understood the prior proceeding. The following colloquy occurred:

> "[THE STATE]: One other thing I want to be clear. On the last date we were here the defendant said that he understood English and agreed to today's court date. Defense counsel said that his client understood English. Today there is an interpreter here. I want to make sure that between August 23rd to today's date, Counsel, defendant did agree to this date and was able to understand those proceedings on that date.
>
> THE COURT: Okay.
>
> [DEFENSE COUNSEL]: Judge, I don't want to say he has a thorough understanding of English, but I did—he was aware we were going to continue it, and that was done with his understanding.
>
> * * *

2

THE COURT: I can understand sometimes it's not a thorough understanding of English so the interpreter is necessary, although there is at least a partial understanding."

An interpreter was present during the subsequent proceedings when defendant appeared in court.

¶ 6 As part of a negotiated plea, the State agreed to dismiss one count of first degree murder and defendant pled guilty to the remaining counts. At defendant's plea hearing on February 25, 2008, the court read the charges and the State presented a factual basis for the plea. According to the factual basis, defendant admitted to detectives that he had shot Ulloa before placing his body inside Ulloa's vehicle and setting it on fire. After the incident, defendant fled the country until he was arrested in June 2004. Both the charges and the factual basis included the allegation that defendant fatally stabbed Ulloa. Defendant indicated that he understood the nature of the charges and agreed to the factual basis. Defendant was sentenced to concurrent terms of imprisonment of 27 years for first degree murder, 7 years for arson, and 5 years for concealment of a homicidal death. Defendant's sentence included terms of mandatory supervised release (MSR) for each count, including a three-year term for first degree murder. Before imposing defendant's sentence, the court admonished defendant about the possible penalties for each count and included MSR admonishments for arson and concealment of a homicidal death. The court did not provide an MSR admonishment for first degree murder. The court noted during the proceedings that despite the presence of the interpreter, defendant had answered in English before the interpreter could translate the court's questions. Defendant stated he understood "a little bit" of English but indicated that he felt more comfortable with the interpreter present. The defendant was admonished that he had to file a written motion to withdraw his plea within 30 days to preserve his right to appeal.

¶ 7        After the plea, defendant filed a number of *pro se* filings in English. In October 2009 and January 2010, defendant filed handwritten motions requesting free transcripts and related case materials. The court denied the motions due to the lack of a pending appeal or motion to withdraw guilty plea. On May 15, 2012, defendant filed a typewritten standardized form seeking to withdraw his guilty plea and vacate his sentence. The court struck the motion as untimely. On June 14, 2012, defendant filed a notice of appeal and another motion requesting free transcripts. The court granted the motion and appointed the State Appellate Defender. Defendant's appeal was voluntarily dismissed on September 7, 2012. On August 12, 2013, defendant filed a typewritten request for grand jury transcripts.

¶ 8        On February 7, 2014, defendant filed a *pro se* postconviction petition, which is the subject of this appeal. In his petition, defendant asserted claims of actual innocence, ineffective assistance of counsel, and several due process violations, including the court's failure to provide an MSR admonishment for his murder sentence. On March 27, 2014, the court advanced the petition to second-stage proceedings and appointed counsel. At the next court date on July 8, 2014, the court requested an interpreter but noted that defendant spoke English "fairly well." When asked if this assessment was accurate, defendant replied that he "underst[ood] like 40 percent." Once an interpreter was present in the courtroom, postconviction counsel informed the court about a discussion he had with defendant about a potential conflict of interest. The conversation occurred without the aid of an interpreter, but counsel believed defendant knew enough English to understand him. The court asked defendant if he understood the nature of the conflict and defendant responded in English, "I understand a little bit because he was speaking a little bit fast and not real clear." In August 2014, defendant filed several *pro se* motions, including a typewritten motion for substitution of counsel. In the motion, defendant stated that he "does not read or write

4

English and can only understand minimal English and speak it to the extent necessary to express himself half-hazzardly [*sic*]." Postconviction counsel remained on the case and did not adopt defendant's *pro se* motions.

¶ 9        Postconviction counsel filed an amended postconviction petition on October 22, 2018. The amended petition primarily focused on defendant's ineffective assistance of counsel claims. Defendant first alleged counsel was ineffective in advising him to proceed with his guilty plea after he informed counsel that the factual basis for the plea established his innocence. Defendant averred that during his plea hearing he learned that Ulloa had died from a stab wound to the neck. Although defendant admitted to shooting Ulloa, he insisted another individual had stabbed him. Defendant further asserted counsel prevented him from filing a motion to withdraw his guilty plea within the 30-day deadline by leading him to believe there was no action he could take to challenge the plea. Additionally, defendant argued that counsel failed to conduct a proper investigation by not contacting an individual named Octavio, who would have aided counsel in contacting Yolanda, the aunt of a man who was present during the incident. Yolanda's nephew would have testified that he witnessed a man named Jorge Hernandez stab Ulloa. The amended petition also included the argument that defendant was not culpably negligent for the untimely filing of his petition because he could not adequately read, write, or speak English.

¶ 10        On January 24, 2019, the State filed a motion to dismiss the amended petition as untimely and for failing to make a substantial showing that defendant's constitutional rights were violated. The State argued defendant could not demonstrate he would not have pled guilty absent counsel's alleged deficient performance because defendant's claim that he first learned Ulloa had died from being stabbed rather than shot was contradicted by his claim regarding the existence of a witness that would testify to seeing another man stab Ulloa. Further, the State contended defendant was

5

aware he could move to withdraw his plea because the court admonished him, through a Spanish-language interpreter, that he had to file a written motion to withdraw his plea within 30 days to preserve his right to appeal. Additionally, defendant could not show counsel's performance was deficient for not investigating exculpatory evidence because defendant failed to include an affidavit or other evidence to support his assertion that his alleged unnamed witness, identified only as the nephew of a woman named Yolanda, could have provided helpful evidence to the defense. Finally, the State noted defendant's acceptance of the plea offer of a 27-year sentence was unlikely to be the result of counsel's alleged deficient performance considering defendant was facing a sentence of up to 100 years if he were to go to trial on the charged offenses and his uncontested acts of burning Ulloa's body and fleeing the country evidenced his consciousness of guilt.

¶ 11        Postconviction counsel subsequently filed second, third, and fourth amended petitions. In his fourth amended petition, defendant indicated that the letters he submitted to the court in 2009 and 2010 were not accurate representations of his English proficiency because they were written with assistance from other inmates. Defendant claimed that in addition to his inability to adequately communicate in English, the late filing of his petition was not a result of culpable negligence due to lockdowns at the Menard Correctional Center, where defendant was incarcerated. Defendant alleged that the lockdowns prevented him from working on his petition because he "almost never had an opportunity to speak to other inmates or visit a law library" and attached a record from the Illinois Department of Corrections (DOC) listing the lockdowns that occurred at Menard between 2008 and 2011. Additionally, defendant asserted that more than three years from his sentencing date had passed before he was transferred to Pinckneyville Correctional Center, where he was finally able to obtain assistance from other inmates and access the law library

6

to work on his petition. Defendant further claimed that he was not properly admonished about the MSR term he would be required to serve as part of his murder sentence and did not discover MSR had been imposed for that conviction until 2013.

¶ 12       The State moved to dismiss the fourth amended petition. The court granted the motion, finding that the untimely filing of defendant's petition was due to his culpable negligence because: (1) he had the ability to communicate with the court in English, as evidenced by the written correspondence he had filed; and (2) the lockdowns at Menard were not attributable to the delay because defendant did not file his petition until several years after he was transferred to another prison. Defendant appealed.

¶ 13                                        II. ANALYSIS

¶ 14       On appeal, defendant presents two separate arguments to support his claim that the circuit court erred in dismissing his postconviction petition as untimely because he lacked culpable negligence. First, defendant contends the late filing of his petition was attributable to the frequent lockdowns at Menard Correctional Center which prevented him from obtaining assistance to draft the petition and his inability to communicate in English. Second, defendant asserts that his claim concerning the court's failure to admonish him about the three-year term of MSR imposed as part of his sentence for murder was not untimely because he did not discover that he had been sentenced to MSR for that conviction until 2013.

¶ 15       The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2014)) provides a three-stage procedural mechanism for petitioners seeking remedy for substantial constitutional rights violations that occurred during the proceedings that led to his or her conviction. *People v. Watson*, 2022 IL App (5th) 190427, ¶ 31. Under the Act, if a defendant does not file a direct appeal, a petition for postconviction relief must be filed no later than three years after the date of

conviction, unless defendant alleges facts demonstrating that the delay was not due to his or her culpable negligence. 725 ILCS 5/122-1(c) (West 2014). Culpable negligence "contemplates something greater than ordinary negligence and is akin to recklessness." *People v. Boclair*, 202 Ill. 2d 89, 108 (2002). While not intentional, culpable negligence involves a disregard of the consequences resulting from one's actions. *People v. Stoecker*, 384 Ill. App. 3d 289, 292 (2008). "Absent allegations of lack of culpable negligence, the Act directs the trial court to dismiss the petition as untimely at the second stage upon the State's motion." *People v. Perkins*, 229 Ill. 2d 34, 43 (2007). Whether a postconviction petition was properly dismissed as untimely is determined using a bifurcated standard of review. *Stoecker*, 384 Ill. App. 3d at 292. "The trial court's findings of fact regarding a defendant's culpable negligence will be reversed only if they were manifestly erroneous, but the ultimate conclusion of whether the established facts demonstrate culpable negligence is subject to a *de novo* review." *Id.*

¶ 16    There is no dispute that defendant's petition was untimely. Defendant concedes that his postconviction petition was filed late—almost six years after his conviction. Rather, defendant offers several explanations to establish that the delay was not due to his culpable negligence. With respect to defendant's first explanation involving lockdowns at Menard, we recognize that many prisoners require assistance from other inmates to draft their legal filings and prison law libraries can serve as a meeting place to facilitate such assistance. See *People v. Mitchell*, 296 Ill. App. 3d 930, 933 (1998). Therefore, some delay is excusable where the record reflects that lockdowns have deprived defendant of a meaningful opportunity to prepare his petition. *Id.*

¶ 17    Here, defendant included a DOC record in his petition outlining the lockdowns that occurred at Menard from 2008 to 2011. The record contains a mostly indecipherable list of dates and abbreviations that presumably correspond to different units within the prison separated into

columns labeled "Level IV," "Normal Operations," and "Holiday Schedule." It is impossible to determine from this information alone which lockdowns would have directly interfered with defendant's ability to seek assistance from other inmates or access the law library. Absent specific facts surrounding the lockdowns, defendant cannot sufficiently support his claim that the lockdowns impeded his ability to timely file his petition. See *People v. Walker*, 331 Ill. App. 3d 335, 341-42 (2002). Moreover, defendant acknowledged that lockdowns were not an issue once he transferred to Pinckneyville but provides no explanation for the additional delay in filing his petition after he left Menard. Although defendant does not state the exact date he was transferred, the record contains a *pro se* motion he mailed from Pinckneyville on May 10, 2012. From that date, almost two years passed before defendant filed his postconviction petition on February 7, 2014. See *People v. Gerow*, 388 Ill. App. 3d 524, 530 (2009) (unexplained extended delays must be attributed to defendant's culpable negligence).

¶ 18    Notably, defendant's claim that he was unable to seek assistance from other inmates is directly contradicted by his assertion that the 2009 and 2010 letters he sent to the court were not accurate representations of his English proficiency because they were drafted with the help of fellow inmates. In addition to the aforementioned letters, the record contains numerous *pro se* documents filed by defendant. Defendant argues that the documents reflect his ignorance of the law, demonstrating his need for assistance to pursue his claims due to his lack of English fluency. However, defendant cannot excuse his delay on his ignorance of the law. See *People v. Lander*, 215 Ill. 2d 577, 588 (2005). Defendant's written communications, even if drafted with assistance, indicate he had the ability to draft and file his petition with the court in advance of the statutory deadline and the Act does not make exceptions for defendants who do not speak fluent English. See *People v. Cruz*, 2013 IL App (1st) 091944, ¶ 27. Considering that defendant was also able to

9

understand and speak to the court in English during his plea hearing, we find the court's determination that he had the ability to effectively communicate in English not manifestly erroneous in light of the record.

¶ 19 Defendant further contends that in finding him culpably negligent and dismissing his petition, the court only considered the delays related to his ineffective assistance claim and failed to recognize that his MSR admonishment claim was timely filed because he was not aware of the MSR term until 2013. Despite his assertion, defendant does not provide sufficient facts or law to support his proposition that the late discovery of this claim absolves him of culpable negligence or extends the statutory time limit for filing his petition and "[t]he appellate court is not a repository into which an appellant may foist the burden of argument and research." *Ramos v. Kewanee Hospital*, 2013 IL App (3d) 120001, ¶ 37. Nevertheless, we note that the exception in section 122-1(c) for delays lacking culpable negligence could potentially excuse a delay arising from the late discovery of a claim. *People v. Davis*, 351 Ill. App. 3d 215, 218 (2004). However, there is no provision that such discovery resets the three-year timeframe for filing a petition. *Id.* Whether a delay is due to culpable negligence is determined based on when the claim is discovered and how quickly defendant acts after the discovery. *Id.* Defendant cannot sufficiently demonstrate that he lacked culpable negligence here because he failed to allege with any specificity when in 2013 he learned of the MSR term, effectively precluding any determination of how expeditiously he acted to file his petition after discovering the claim. See *People v. Hobson*, 386 Ill. App. 3d 221, 233 (2008) (a defendant asserting lack of culpable negligence must support his assertion by alleging specific facts to justify the delay).

¶ 20 For the reasons stated, defendant has failed to meet his burden of showing that the delay in filing his petition was not a result of his culpable negligence. See *Stoecker*, 384 Ill. App. 3d at 292.

10

Because we conclude that defendant's postconviction petition was properly dismissed as untimely, we need not address defendant's remaining claims. However, we note the evidence in the record belies defendant's contention he made a substantial showing that his counsel provided ineffective assistance in advising him to proceed with his guilty plea. During his plea hearing, defendant confirmed he understood the nature of the charges and agreed to the factual basis for the plea. Defendant admitted to shooting Ulloa, burning his body, and fleeing the country. Defendant cannot demonstrate, in light of the circumstances, that rejecting the State's plea offer of 27 years' imprisonment would have been a rational decision when a trial posed the possibility of a 100-year sentence. See *People v. Hatter*, 2021 IL 125981, ¶¶ 30, 36; *People v. Brown*, 2017 IL 121681, ¶ 48. Additionally, defendant was well aware that he could move to withdraw his guilty plea within 30 days after being admonished by the court. Furthermore, defendant's petition did not include an affidavit from his alleged exculpatory witness, dubiously identified as the unnamed nephew of a woman named Yolanda, who would testify that an alternate perpetrator had stabbed Ulloa. Absent this affidavit, defendant also cannot make a substantial showing of ineffective assistance for counsel's failure to investigate because there is no evidence that the exculpatory evidence actually exists. See *People v. Dupree*, 2018 IL 122307, ¶ 37.

¶ 21 To the extent defendant raised a claim of actual innocence, such a claim would be timely filed because there is no statute of limitations on actual innocence claims. However, such claim must be supported by newly discovered evidence that defendant could not have discovered earlier through due diligence. Defendant presents no such evidence.

¶ 22 III. CONCLUSION

¶ 23 The judgment of the circuit court of Will County is affirmed.

¶ 24 Affirmed.

11